# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### September 1, 2011 Session

## RAY BELL CONSTRUCTION COMPANY, INC.
### v.
## STATE OF TENNESSEE,
## TENNESSEE DEPARTMENT OF TRANSPORTATION

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Tennessee Claims Commission**
**No. T200712151      William O. Shults, Commissioner**

---

**No. E2009-01803-SC-R11-CV - Filed December 12, 2011**

---

A construction company entered into a contract with the State of Tennessee to restructure an interstate interchange. The contract provides that the contract completion date "may be extended in accordance with the Standard Specifications, however, no incentive payment will be made if work is not completed in its entirety by December 15, 2006." The Claims Commission found that the contract contained a latent ambiguity requiring extrinsic evidence to interpret the contract. The Claims Commission considered extrinsic evidence and concluded that the construction company was entitled to the maximum incentive payment and an extension of the contract completion date. A divided Court of Appeals affirmed the judgment of the Claims Commission. We hold that the contract is unambiguous and does not permit an extension of the incentive date. Accordingly, we reverse the Court of Appeals and remand to the Claims Commission for modification of the final judgment.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Reversed**

JANICE M. HOLDER, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; Melissa Ann Brodhag, Assistant Attorney General, for the appellant, State of Tennessee, Tennessee Department of Transportation.

Craig N. Mangum, Matthew J. DeVries (at the Court of Appeals), Gregory Lee Cashion, and Donald Capparella, Nashville, Tennessee, for the appellee, Ray Bell Construction Company, Inc.

**OPINION**

I. Facts and Procedural History

Ray Bell Construction Company ("Ray Bell") entered into a contract on May 28, 2003, with the Tennessee Department of Transportation ("TDOT") to reconstruct the I-240 and I-40 interchange located in Memphis, Tennessee. Construction began on June 18, 2003, and was to be completed on or before December 15, 2006. The contract between Ray Bell and TDOT contained a provision that included both an incentive clause and a disincentive clause. The incentive clause provided Ray Bell a bonus if the contract work was completed on or before December 15, 2006. The disincentive clause provided a penalty for every day contract work remained incomplete after December 15, 2006.

The contract also provided for an extension of the completion date when work delays were caused by events outside the contractor's control. During construction, Ray Bell encountered delays due to bridge closings by TDOT and other events beyond Ray Bell's control. Ray Bell sought to extend the completion date of the contract to accommodate these delays.

Ray Bell first requested a 289-day extension of the contract completion date. In response to Ray Bell's request, TDOT proposed Supplemental Agreement 24, which would have extended the completion date and the disincentive date of the original contract by 137 calendar days to May 1, 2007. Ray Bell refused to execute the supplemental agreement, however, because the agreement stated that the incentive date would remain December 15, 2006.

Ray Bell notified the TDOT Engineer that it considered the contract work substantially complete. The Engineer inspected the project site and determined that the contract had been satisfactorily completed on December 17, 2006.

Following the completion of the contract, Ray Bell requested a 362-day extension of the completion date, the disincentive date, and the incentive date. TDOT again responded that it would grant a 137-day extension as to both the completion and disincentive dates but that the incentive date would remain December 15, 2006.

Ray Bell filed a complaint in the Tennessee Claims Commission alleging that TDOT had breached the contract by refusing to grant an appropriate time extension of the completion date, the disincentive date, and the incentive date. Ray Bell specifically sought an extension of the contract incentive date and the maximum award of $2,500,000 based on the language of the contract. TDOT maintained in its answer that the contract was deliberately and clearly written to allow for an extension of both the completion date and the disincentive date but that the contract did not permit an extension of the incentive date.

Both parties filed motions for summary judgment, which the Commissioner denied. The Commissioner conducted a trial to determine whether Ray Bell was entitled to the maximum incentive bonus "even though the contract was not completed by December 15, 2006, as seemingly strictly required by . . . the original contract." The Claims Commission found the contract contained "an egregious ambiguity" that required extrinsic evidence to interpret the contract. The Claims Commission considered extrinsic evidence and found that Ray Bell was entitled to the maximum incentive payment and to an extension of the completion date, the disincentive date, and the incentive date. The Claims Commission entered a judgment in favor of Ray Bell for $2,948,696.77.[1] A divided Court of Appeals affirmed the judgment of the Claims Commission.[2] Ray Bell Const. Co. v. Tenn. Dep't of Transp., No. E2009-01803-COA-R3-CV, 2010 WL 4810670, at *15 (Tenn. Ct. App. Nov. 24, 2010). We granted TDOT permission to appeal.

## II. Analysis

In interpreting a written contract, we review a written agreement de novo without affording any presumption of correctness to the lower court's conclusions of law. Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006). This Court's initial task is to determine whether the language in the contract is ambiguous. Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002). If the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract. See Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998).

---

[1] The judgment amount included: $2,500,000 for the incentive bonus, based on 250 days at $10,000 per day; $173,618.50 in prejudgment interest on the incentive bonus for the periods of April 7, 2007, through January 30, 2009, and June 8, 2009, through July 31, 2009; $193,800 for the return of liquidated damages and disincentive payments previously withheld by TDOT; $13,458.91 in prejudgment interest on the liquidated damages and disincentive payments for the periods listed above; and $67,819.36 for unpaid supplemental agreements and quantity adjustments.

[2] Judge D. Michael Swiney filed a dissenting opinion. Ray Bell Const. Co. v. Tenn. Dep't of Transp., No. E2009-01803-COA-R3-CV, 2010 WL 4810670, at *44-*49 (Tenn. Ct. App. Nov. 24, 2010).

The Claims Commission found that the contract between Ray Bell and TDOT contained a latent ambiguity when several contract provisions were read together. The provisions at issue were Special Provision 108B (the "Completion Provision"), which contains an incentive clause and a disincentive clause, and Standard Specification 108.06 (the "Extension Provision"), which addresses the extension of the completion date of the contract.

With respect to the incentive date, the Completion Provision provides:

> For each calendar day prior to December 15, 2006, that all work in the original contract has been completed and all lanes are opened to the free, safe and unrestricted passage of traffic, an incentive payment of ten thousand dollars ($10,000) per day shall be made to the contractor as an incentive. However, the maximum amount of incentive payments shall not exceed two million five hundred thousand dollars ($2,500,000).

The Completion Provision's disincentive clause provides:

> For each day after December 15, 2006, that all work in the original contract is not completed, the sum of ten thousand dollars ($10,000) per day shall be deducted from monies due the Contractor as a disincentive. The amount of monies that may be deducted as a disincentive shall be unlimited except that the disincentive may be waived if the working time is extended in accordance with the Standard Specifications.

> . . . . The December 15, 2006, completion date may be extended in accordance with the Standard Specifications, however, no incentive payment will be made if work is not completed in its entirety by December 15, 2006.

(Emphasis added).

The Extension Provision, which governs possible extension of the contract completion date, provides in pertinent part:

> If the Contractor finds it impossible for reasons beyond his control to complete the Work within the contract time as specified or as extended in accordance with the provisions of this Subsection, he may, at any time prior to the expiration of the contract time specified or as extended, make a written request to the Engineer for an extension of time setting forth therein the reasons which he believes will justify the granting of his request. The Contractor's plea that insufficient time was specified is not a valid reason for extension of time. If

-4-

the Engineer finds that the Work was delayed because of conditions beyond the control and without the fault of the contractor, he may extend the time for completion by a properly executed Supplemental Agreement in such amount as the conditions justify. The extended time for completion shall then be in full force and effect the same as though it were the original time for completion.

The contract also contains an "Order of Precedence" clause that states "[i]n case of discrepancy . . . , Special Provisions will govern over both [Contract] Plans and [Standard] Specifications."

We find the above provisions to be unambiguous. The contract's Order of Precedence clause dictates which provision must prevail when several provisions are at issue. Applying the Order of Precedence clause, the Completion Provision containing the incentive and disincentive clauses is a Special Provision and governs over the Extension Provision, which is a Standard Specification. Recognizing that the Completion Provision is controlling, we must next consider the plain language of the contract provisions.

The extension of the incentive date is governed by the language of the Completion Provision. The first paragraph of the Completion Provision, the incentive clause, allows an incentive bonus for every day prior to December 15, 2006, that "all work in the original contract has been completed and all lanes are opened to the free, safe and unrestricted passage of traffic." The second paragraph of the Completion Provision, the disincentive clause, imposes a penalty for every day that the contract work remains incomplete after December 15, 2006. The second paragraph also states, however, that TDOT may waive the disincentive "if the working time is extended in accordance with the Standard Specifications" for reasons beyond the contractor's control. There is no corresponding provision in the incentive clause permitting TDOT to extend the incentive date due to reasons beyond the contractor's control. TDOT's offer to extend only the completion and disincentive dates by 137 days therefore was consistent with the language of the Completion Provision.

The third paragraph of the Completion Provision serves to emphasize the distinction between the incentive bonus and the disincentive penalty. It states that although the "completion date may be extended in accordance with the Standard Specifications . . . , no incentive payment will be made if work is not completed in its entirety by December 15, 2006." This provision is unambiguous. Even if the completion date is extended due to circumstances beyond the contractor's control, no incentive payments are due if the contract was completed after December 15, 2006. When the contract language is unambiguous it is the duty of the courts to interpret the contract according to its plain terms. Maggart v.

Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008). TDOT's refusal to extend the incentive date beyond December 15, 2006, was therefore consistent with the contract.

As construed above, the Completion Provision does not serve to render the Extension Provision meaningless or superfluous when the two are read together. Maggart, 259 S.W.3d at 704 (stating that courts should interpret a contract such that no portion is rendered meaningless). The Extension Provision allows for the extension of both the contract completion date and the disincentive date if the Engineer finds that the circumstances warrant an extension due to events beyond the control of the contractor. The Completion Provision, however, does not permit the award of an incentive payment unless all work is completed on or before December 15, 2006. This language is not reasonably subject to another interpretation. See Maggart, 259 S.W.3d at 704.

Finding that the contract is unambiguous, we must determine the date of completion of the contract. The Claims Commission implicitly held that the contract was not completed by December 15, 2006. The evidence does not preponderate against the Claims Commission's determination. Ray Bell therefore is not entitled to an incentive bonus. TDOT has not appealed the Claims Commission's finding that the contract completion date should be extended by at least 250 days. Ray Bell therefore is not subject to any disincentive penalty. We reverse the Claims Commission's award of an incentive bonus in the amount of $2,500,000 and the related $173,618.50 in prejudgment interest. We remand this case to the Claims Commission to enter judgment in favor of Ray Bell for liquidated damages and disincentive payments previously withheld by TDOT, prejudgment interest on those amounts, unpaid supplemental agreements and quantity adjustments, and for other proceedings consistent with this opinion.

## III. Conclusion

We reverse the Court of Appeals and remand this case to the Claims Commission for modification of the final judgment. Costs of this appeal are taxed to the appellee, Ray Bell Construction Co., for which execution may issue, if necessary.

_____
JANICE M. HOLDER, JUSTICE

-6-