# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 12, 2013 Session

## FEDERAL NATIONAL MORTGAGE ASSOCIATION v. TN METRO HOLDINGS XII LLC ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2011C-47      Tom E. Gray, Chancellor**

**No. M2012-01803-COA-R3-CV - Filed May 14, 2013**

Federal National Mortgage Association ("FNMA") initially brought this action for foreclosure and damages against a borrower, TN Metro Holdings XII LLC ("TN Metro XII") alleging default by failure to make scheduled principal and interest payments, by improperly allowing liens against the mortgaged property in violation of the loan agreements and by misapplication of rents collected from leasing the mortgaged property. FNMA subsequently filed an amended complaint seeking relief in the nature of personal liability against Defendant Selim Zherka under the loan. The trial court granted FNMA summary judgment and held both the borrower and "Key Principal" liable for the deficiency following a foreclosure sale and for damages. We vacate the summary judgment, holding that (1) FNMA failed to provide written notice and a thirty-day period to cure the alleged defaults as required by the parties' agreement; and (2) there are genuine issues of material fact making summary judgment improper regarding FNMA's claim for damages resulting from the alleged misapplication of rents.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

H. Buckley Cole and Bryant C. Witt, Nashville, Tennessee, for the appellants, TN Metro Holdings XII LLC and Selim Zherka.

John F. Teitenberg, Nashville, Tennessee, for the appellee, Federal National Mortgage Association.

# OPINION

## I. Factual and Procedural Background

On April 25, 2007, Defendant TN Metro XII, acting through its authorized managing member and owner, Defendant Selim Zherka, executed and delivered to Sovereign Bank a promissory note in the amount of $8,616,000 for the purpose of using the proceeds to buy an apartment complex known as Pheasant Run Apartments in Hendersonville, Tennessee ("the Property"). To secure payment of the note, TN Metro XII executed a deed of trust, security agreement, and assignment of rights (the "Security Instrument") in favor of Sovereign Bank. The promissory note was "non-recourse," i.e., it provided for no personal liability on the part of the borrower, as stated in paragraph 9:

> (a) Except as otherwise provided in this Paragraph 9, Borrower [TN Metro XII] shall have no personal liability under this Note, the Security Instrument or any other Loan Document for the repayment of the Indebtedness or for the performance of any other obligations of Borrower under the Loan Documents, and Lender's only recourse for the satisfaction of the Indebtedness and the performance of such obligations shall be Lender's exercise of its rights and remedies with respect to the Mortgaged Property . . . .

Paragraph 9 of the note provided for two exceptions imposing personal liability, however, that are relevant to the issues presented herein. The first, referenced as the "Rent Exception," provided that

> (b) Borrower shall be personally liable to Lender for the repayment of a portion of the Indebtedness equal to any loss or damage suffered by Lender as a result of:
>
> > (1) failure of Borrower to pay to Lender upon demand after an Event of Default, all Rents to which Lender is entitled under Section 3(a) of the Security Instrument and the amount of all security deposits collected by Borrower from tenants then in residence;
> > . . .
> > or (5) failure to apply Rents, first, to the payment of reasonable operating expenses . . . and then to Debt Service Amounts . . . .

The second relevant exception imposing personal liability for the debt, referenced as the "Transfer Exception," provided that "Borrower shall become personally liable to Lender

for the repayment of all the Indebtedness upon the occurrence of any of the following Events of Default: . . . (2) a Transfer that is an Event of Default under Section 21 of the Security Instrument." The Security Instrument provided that

> the grant, creation or existence of any mortgage, deed of trust, deed to secure debt, security interest or other lien or encumbrance (a "Lien") on the Mortgaged Property (other than the lien of this Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the lien of this Instrument, is a "Transfer" which constitutes an Event of Default.

Mr. Zherka also executed a document styled "Acknowledgment and Agreement of Key Principal to Personal Liability for Exceptions to Non-Recourse Liability," in which he, as Key Principal, "absolutely, unconditionally, and irrevocably agree[d] to pay to Lender, or its assigns, on demand, all amounts for which Borrower [TN Metro XII] is personally liable under Paragraph 9" of the note. Sovereign Bank assigned all of the loan documents to Plaintiff FNMA on April 25, 2007, the same day they were executed.

On March 2, 2011, FNMA filed the instant complaint for foreclosure and damages, alleging, *inter alia,* that "TN Metro XII is in default for failure to pay monthly principal and interest payments since September 2010 and for failure to provide financial information required and requested under the terms of the Note and Rent/Security Agreement." The complaint further alleged that the principal amount of the note—$8,473,996.73—was then due and owing FNMA from TN Metro XII. TN Metro XII did not deny that it had failed to make principal and interest payments due to FNMA after September 2010. This matter was temporarily stayed as a result of TN Metro XII filing bankruptcy on March 9, 2011. The stay ended when the bankruptcy court dismissed the bankruptcy petition on April 21, 2011. At a subsequent foreclosure proceeding on June 1, 2011, FNMA was the highest bidder for the Property with a bid of $4.1 million.

On July 28, 2011, FNMA filed an amended complaint, alleging that on June 1, 2011, the total amount owed on the note was $9,498,221.59, including $8,464,065.00 in principal, $421,832.00 in interest accrued, $594,177.00 in default interest, and $3,306.00 in late charges. FNMA also alleged that TN Metro XII was liable for other expenses, including legal fees, appraisals, inspections, and taxes totalling $168,541.00 as well as a "prepayment premium" in the amount of $1,386,297.00 less an escrow fund amount of $53,701.00. The amended complaint asserted that following the foreclosure auction at which FNMA bought the Property for $4,100,000, "[a] deficiency in the amount of $6,784,519 exists as of June 1, 2011."

FNMA further alleged in the amended complaint, for the first time, that TN Metro XII and Mr. Zherka were personally liable for the amounts owed on the note because (1) TN Metro XII failed to pay rents that it had collected from leasing the Property and were due to FNMA, and because (2) TN Metro XII "improperly allowed a number of liens and/or encumbrances against the Property." FNMA alleged that because "[t]hese liens have not been bonded off, released of record or otherwise remedied to [FNMA's] satisfaction within 30 days of creation," and because the note and Security Instrument state that "a lien is a Transfer creating an Event of Default if the lien is not removed within thirty days," TN Metro XII and Mr. Zherka had incurred personal liability. TN Metro XII and Mr. Zherka answered, denying personal liability under the terms of the note and Security Instrument.

FNMA moved for summary judgment on December 27, 2011. TN Metro XII and Mr. Zherka, in a supplemental response to the motion for summary judgment, argued that there had been no default resulting from the liens against the Property because FNMA failed to provide written notice and an opportunity to cure as required by the Security Instrument. TN Metro XII and Mr. Zherka further asserted that genuine issues of material fact regarding FNMA's claims for misapplied rents collected in early 2011 made summary judgment improper. Following a hearing on June 22, 2012, the trial court entered an order granting summary judgment in favor of FNMA in the amount of $6,906,572.25 and holding TN Metro XII as borrower and Mr. Zherka as guarantor jointly and severally liable in the amount of the judgment. TN Metro XII and Mr. Zherka timely appealed.

## II. Issues Presented

TN Metro XII and Mr. Zherka present the following restated issues:
(1) Whether the trial court erred in granting summary judgment when FNMA failed to provide notice of the alleged default and opportunity to cure the default as required by contract;
(2) Whether the trial court erred by imposing over $6.7 million in personal liability for immaterial breaches that did not impair FNMA's collateral;
(3) Whether the trial court erred in enforcing a punitive damages provision to impose personal liability on a generally non-recourse debt; and
(4) Whether there are genuine issues of material fact making summary judgment improper on FNMA's claim for breach of contract resulting from an alleged misapplication of rents.

## III. Standard of Review

Our Supreme Court has recently succinctly described the applicable standard of review of a trial court's grant of summary judgment as follows:

A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 84 (Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, ___ S.W.3d ___, ___, No. E2010–01685–SC–R11–CV, 2013 WL 175491 at *13 (Tenn. Jan. 17, 2013).

## IV. Analysis

### A. Notice of Default and Opportunity to Cure

We first address the issue of whether FNMA provided sufficient notice, as required by the Security Instrument, to TN Metro XII and Mr. Zherka of the alleged default resulting from the liens on the Property. In its amended complaint, FNMA alleged the existence of several liens or encumbrances against the Property, including: (1) unpaid Sumner County property taxes for 2010 in the amount of $54,984.57; (2) unpaid City of Hendersonville property taxes for 2010 in the amount of $17,425.00; (3) a lien recorded by A Action Steamer in the amount of $925.00; (4) a lien recorded by Brookemeade Hardware & Supply Co. in the amount of $2,232.02; (5) a mechanic's lien recorded by HD Supply, Inc. in the amount of $5,401.01; (6) a lien recorded by American Carpet Connection in the amount of $6,869.22; and (7) a lien recorded by ABC Flooring in the amount of $3,461.37. Claiming that TN Metro XII and Mr. Zherka were personally liable for the entire deficiency after the foreclosure auction and sale, FNMA relied upon a provision in the Security Instrument stating that "the grant, creation or existence of any . . . lien or encumbrance (a "Lien") on the Mortgaged Property. . . is a "Transfer" which constitutes an Event of Default." FNMA further asserted reliance upon the provision in the note that "Borrower shall become personally liable to Lender for the repayment of all the Indebtedness upon the occurrence of

. . . a Transfer that is an Event of Default."

TN Metro XII and Mr. Zherka responded by arguing that the Security Instrument agreement required FNMA to provide written notice and a thirty-day period to cure the default and that FNMA had failed to provide the requisite notice. The controlling provision of the Security Instrument provides as follows in relevant part:

> Notwithstanding any of the provisions contained herein to the contrary, *Lender shall provide Borrower written notice* of any Non-Monetary Default hereunder. As used herein, the term "Non-Monetary Default" shall mean any default under the terms and provisions hereof other than a default in the payment to the Lender of any sum or amount of money which may fall due or be payable from time to time under the terms hereof or the note secured hereby. *Borrower shall have a period of thirty (30) days* after Lender's giving of written notice of such Non-Monetary Default within which time such Non-Monetary Default must be cured; . . . *An Event of Default shall not be deemed to have occurred under this Security Instrument until the expiration of the applicable notice and cure period set forth above.*

(Emphasis added). FNMA does not dispute that the first time it mentioned the liens on the Property and alleged that their existence resulted in personal liability for the entire indebtedness under the note was in its amended complaint. FNMA posited that despite its failure to notify TN Metro XII or Mr. Zherka via correspondence or any other communication prior to the filing of the amended complaint, the allegations contained in the amended complaint satisfied the notice requirement. The trial court agreed with FNMA's position, determining in an amended order awarding summary judgment that "a Complaint can satisfy the notice requirement."

The resolution of this issue requires the interpretation of a written contract. "The interpretation of written agreements . . . is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law." *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). In interpreting a contract, our "initial task is to determine whether the language in the contract is ambiguous." *Ray Bell Constr. Co. v. Tenn. Dep't of Transp.*, 356 S.W.3d 384, 387 (Tenn. 2011). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. The intent of the parties is presumed to be that specifically expressed in the body of the contract." *Planters Gin Co. v. Fed. Compass & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) (internal citation omitted). As our Supreme Court has recently explained,

We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the contract." The literal meaning of the contract language controls if the language is clear and unambiguous. However, if the terms are ambiguous in that they are "susceptible to more than one reasonable interpretation," we must apply other established rules of construction to aid in determining the contracting parties' intent. The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction.

*Dick Broad. Co.*, ___ S.W.3d ___, ___, 2013 WL 175491 at *4 (internal citations omitted).

In the case at bar, the plain language of the contractual notice provision states that the "Lender *shall* provide Borrower written notice" and that the "Borrower *shall* have a period of thirty (30) days after Lender's giving of written notice" to cure the alleged default (emphasis added). The parties' use of the term "shall" indicates that the notice requirement and the period to cure were intended as mandatory. *Cf. Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) ("'When "shall" is used . . . it is ordinarily construed as being mandatory and not discretionary.'") (quoting *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009)). FNMA admitted, in an answer to an interrogatory requesting it to "[s]tate when, if ever, you gave TN Metro XII notice to remove each of the liens or encumbrances listed [in] . . . the Amended Complaint," that its position was that FNMA "was not required to give any notice and would have no reason to do so."

We conclude that FNMA failed to provide written notice as required by the Security Instrument, and that its filing of an amended complaint alleging default and consequent personal liability was not effective notice under the respective contract. It is clear that the intent and purpose of the written notice requirement and the thirty-day period to cure was to give the parties an opportunity to *avoid* default and litigation if possible. The amended complaint made no mention of the thirty-day cure period that would be triggered by the lender's written notice. The borrower, TN Metro XII, had the right to reasonably rely on the contractual notice provision and the assurance that it would have thirty days to cure any alleged default resulting from a lien or encumbrance on the property. FNMA has cited no legal authority supporting the proposition that the filing of a complaint or amended complaint satisfies a contractual provision requiring written notice to a borrower under these circumstances.[1] Moreover, to the extent that there exists any ambiguity about the definition

---

[1] The decisions cited by FNMA ostensibly in support of its position, *In re Bridgestone/Firestone, Inc. Prods. Liab. Litigation*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), *Moon v. Auto-Owners Ins. Co.*, 736 S.W.2d
(continued...)

or meaning of the term "written notice," "[a]n ambiguous provision in a contract generally will be construed against the party drafting it." *Allstate Ins. Co.*, 195 S.W.3d at 612. FNMA drafted the agreements at issue in this case.

Because FNMA failed to provide written notice as required by the Security Instrument, there was no default resulting from the liens on the Property under the clear and express language of the Security Instrument providing that "[a]n event of Default shall not be deemed to have occurred under this Security Instrument until the expiration of the applicable notice and cure period set forth above." It follows that the trial court erred by granting summary judgment in favor of FNMA and by holding TN Metro XII and Mr. Zherka personally liable for the amount of the deficiency. Our conclusion that there was no default pursuant to the Security Instrument agreement renders moot the issues of whether the trial court erred in imposing personal liability for "immaterial breaches" and whether the contractual provision imposing personal liability for the entire indebtedness is unenforceable as imposing an "unconscionable penalty."

### B. Claim for Breach of Contract

We next address the issue of whether there are genuine issues of material fact making summary judgment improper on FNMA's claim for breach of contract resulting from an alleged misapplication of rents. FNMA alleged that TN Metro XII's misapplication of rents received from leasing the apartment units of the Property during March and April of 2011 resulted in TN Metro XII and Mr. Zherka incurring personal liability, not for the entire amount of the indebtedness under the note and Security Instrument, but for the amount allegedly misapplied, under the Rent Exception to this generally non-recourse loan. In pertinent part, FNMA alleged in its amended complaint that

> revenues of approximately $84,047 each month were generated in March and April 2011, no payments were made to [FNMA] for principal or interest, and total expenditures for the property of approximately $33,567 were incurred. Thus, over 168,000 in revenues less no more than $35,000 in expenses, plus a bank balance of approximately $28,000 leaves over $100,000 in missing revenues during the bankruptcy period. The failure of TN Metro XII to pay [FNMA] all rents to which [FNMA] is entitled under . . . the Security Instrument imposes recourse liability against both TN Metro XII and Zherka under the Note[.]

---

[1](...continued)
92 (Tenn. 1987), and *Wal-Board Supply Co. v. Daniels*, 629 S.W.2d 686 (Tenn. Ct. App. 1981), involve distinctly different factual and legal circumstances and are thus inapposite and distinguishable.

In support of these allegations, FNMA filed the affidavit of Diane Cathey, an employee of Continental Property Management, LLC, the receiver appointed by the trial court in this action. Ms. Cathey attested that "[d]ocuments produced by TN Metro XII or its counsel reflected rents of approximately $84,000 per month, and expenditures of less than $35,000 for March 9, 2011 through April 13, 2011." Mr. Zherka filed his own affidavits, however, disputing the amounts of TN Metro XII's revenues and expenses during this time period. In his first affidavit dated January 31, 2012, Mr. Zherka stated *inter alia* as follows:

> [FNMA] contends that there were significant sums of rents not accounted for while TN Metro XII was operating the Property based on documents provided to [FNMA] in connection with the bankruptcy hearing on April 21, 2011. [FNMA] repeatedly cites that there was $50,000 more in revenues than expenses between March 9, 2011 and April 13, 2011. Before the hearing, TN Metro XII determined that the figures provided were not correct. . . .
> Just as TN Metro XII chose not to rely upon the erroneous numerous [*sic*] described in Statement of Undisputed Facts No. 14, this Court should not rely upon them as they are erroneous.

In its statement of undisputed facts, FNMA asserted that "Documents produced by TN Metro XII or its counsel reflected rents of approximately $84,000 per month, and expenditures of less than $35,000 for March 9, 2011 through April 13, 2011." TN Metro XII and Mr. Zherka responded: "[d]enied in part; admitted in part. These figures were provided by TN Metro XII from figures which it was provided. TN Metro XII learned that these figures were erroneous and not reflective of the costs to operate the Property." Finally, Mr. Zherka testified in an affidavit filed later that "I deny that TN Metro Holdings XII or I violated the provisions of the loan documents or the Cash Collateral Order [entered by the bankruptcy court] as alleged by FNMA."

In ruling on a motion for summary judgment, "[c]ourts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d at 364 (Tenn. 2009). By incorporating the applicable summary judgment standard, we hold that Mr. Zherka's sworn statements refuting facts claimed by FNMA create genuine issues of material fact regarding the amounts of revenues collected and expenses incurred from the operation of the Property during March and April of 2011. The trial court erred by granting summary judgment regarding FNMA's claim for damages resulting from alleged misapplication of rents.

**V. Conclusion**

The trial court's order granting summary judgment in favor of FNMA is vacated, and the case is remanded for further action consistent with this opinion. Costs on appeal are assessed to the Appellee, Federal National Mortgage Association.

_____
THOMAS R. FRIERSON, II, JUDGE