NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0343n.06

No. 13-6029

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 29, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DAVID PATTERSON, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| GERALD ANDERSON, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

**Before: GUY, GIBBONS, and GRIFFIN, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Judgment in excess of $3.1 million was entered against defendant Gerald Anderson and in favor of plaintiff David Patterson on the claim that defendant breached two contracts by failing to repurchase approximately 109 acres of real property intended for residential development in Williamson County, Tennessee. Defendant appeals from the denial of his pretrial motion for summary judgment, arguing that it was error to conclude that it was ambiguous whether those contracts were intended to be option contracts (as defendant claimed) or repurchase agreements (as plaintiff claimed). Defendant also contends that the district court erred in

concluding that it lacked jurisdiction to decide his motion to alter or amend judgment, which sought to reduce the judgment on grounds not previously raised. For the reasons that follow, we affirm.

## I.

The central issue in this diversity action was whether two contracts—the 1997 "Purchase Contract" and the 1999 "Purchase Contract"—obligated the defendant to repurchase the property in question or merely granted the defendant an option to do so. After a three-day bench trial, the district court issued written findings of fact resolving the issue in plaintiff's favor. We draw on those findings to summarize the circumstances surrounding the transactions involving the two purchase contracts before addressing the question of ambiguity.

In the mid-1990s, defendant Gerald Anderson acquired and consolidated property for residential development in an area known as Raintree Forest in Williamson County, Tennessee. When defendant needed capital in 1997, attorney Peter Curry told defendant that he had a client who might be interested. Plaintiff David Patterson was that client. Curry had acted at various times as an attorney for both plaintiff and defendant—each of whom was a sophisticated businessman. Plaintiff and defendant never met or spoke to one another, but communicated through Curry.

An agreement was reached, and Curry drafted three documents to effect the transaction in July 1997. The first two were: the "Real Estate Sales Contract," by which defendant agreed to sell 102 acres of property in Raintree Forest to plaintiff for $816,000; and the "Warranty Deed" by which defendant conveyed those 102 acres to plaintiff. The

third document was the 1997 "Purchase Contract," stating that plaintiff agreed to sell the 102 acres back to defendant in conveyances of not less than 34 acres at specified intervals and per-acre prices over the following thirty months. Defendant emphasizes that although this purchase contract expressly stated plaintiff's agreement to sell the property to defendant, it did not also expressly state that defendant agreed to buy the property back. Notably, although the Real Estate Sales Contract entered into at the same time similarly lacked an express agreement to buy, it was never claimed to be an option contract. Plaintiff maintained that the two-part transaction was intended to provide defendant with financing at an agreed return of 14.5% annually, and was structured as a land purchase/repurchase for tax reasons.[1]

In 1999, needing a portion of the 102 acres previously transferred to plaintiff, defendant arranged to effectively "swap" approximately 29 acres held by plaintiff for a different and somewhat larger parcel defendant owned in the development. Defendant involved his mother, Ione Hildegard Anderson, in the transaction by having plaintiff sell to her three parcels totaling approximately 29 acres over the course of several months. Then, in October 1999, two documents completed the transaction: a "Warranty Deed" by which defendant conveyed to plaintiff a 39.74-acre parcel for $308,818.93; and a "Purchase Contract," in which plaintiff agreed to sell that property back to defendant at

---

[1]This transaction was apparently intended to allow plaintiff to acquire replacement property so as to defer federal tax through what is referred to as a Section 1031 exchange. Arguments about whether the transaction met the requirements for a Section 1031 exchange are immaterial to the issue of whether the purchase contracts were ambiguous.

an agreed per-acre price by a given date.[2]  Again, this purchase contract did not expressly state that defendant agreed to buy the property back.  Following this transaction, plaintiff held approximately 109 acres of land-locked property within the development subject to the 1997 and 1999 Purchase Contracts.

Plaintiff and defendant agreed to several extensions of these purchase contracts, both in writing and orally, with accompanying increases in the per-acre prices for the property.  There is no dispute that the last extension expired on January 9, 2008, after which plaintiff refused to grant further extensions and defendant refused to repurchase the property.  Plaintiff brought this action seeking, in pertinent part, damages for defendant's breach of the purchase contracts.  Plaintiff moved for summary judgment and, although no response was filed, the magistrate judge recommended entry of summary judgment in favor of defendant.  That recommendation was accepted in part and rejected in part when the district court concluded that ambiguities in the purchase contracts precluded entry of summary judgment.  Drawing on the magistrate judge's reasoning, defendant brought his own motion for summary judgment.  But, the district court again found that the purchase contracts were ambiguous in several respects and denied defendant's motion.

A three-day bench trial followed, after which the district court issued written findings and conclusions of law adhering to its earlier determination of ambiguity; weighing credibility with respect to the intent of the parties at the time of execution; and

---

[2]Although an executed copy of the 1999 Purchase Contract was never produced, the district court found as a factual matter that it was executed.  Defendant does not challenge that finding on appeal.

concluding that "these documents are not option contracts, but rather absolute obligations of Defendant to re-purchase the property previously conveyed to the Plaintiff at the prices and with the interest rates provided in the contracts." After calculating damages based on the difference between the contract price and the fair market value of the property as of January 9, 2008, and adding statutory prejudgment interest since January 9, 2008, judgment was entered in favor of plaintiff in the amount of $3,136,661.49.[3]

Defendant filed a timely notice of appeal, followed by a timely motion to alter or amend judgment seeking to reduce the damage award by the value of the 29 acres that plaintiff sold to defendant's mother (and the associated prejudgment interest). Plaintiff responded that the claim for a "set off" had not been raised at trial and was without merit. The district court denied defendant's motion on the grounds that the already-filed notice of appeal divested it of jurisdiction to rule on the motion. An amended notice of appeal followed.

## II.

Insisting that the district court erred as a matter of law in finding the contracts were ambiguous, defendant argues that his motion for summary judgment should not have been denied, that parol evidence should not have been considered at trial, and that the district court's findings regarding credibility were unnecessary and must be disregarded. Thus, the essence of defendant's appeal concerns the threshold question of whether the purchase contracts clearly and unambiguously reflect an intention to create

---

[3]Defendant did not appear at trial due to health issues, but his deposition testimony, taken while serving a federal sentence for bribing a government official, was admitted into evidence instead.

an option (rather than an obligation) to repurchase the property.

A party may not appeal from the denial of summary judgment after losing at trial on the merits if summary judgment was denied based on the presence of a material question of fact. *See FDIC v. AmTrust Fin. Corp. (In re AmTrust)*, 694 F.3d 741, 750-51 (6th Cir. 2012) (discussing *Ortiz v. Jordan*, 131 S. Ct. 884, 892-93 (2011)). However, that limitation does not apply when, as here, the denial of summary judgment was based on a question of law. *Id.* (allowing appeal from denial of summary judgment on question of contractual ambiguity); *see also BankOne, N.A. v. Echo Acceptance Corp.*, 380 F. App'x 513, 517-18 (6th Cir. 2010) (applying rule to appeal following bench trial). Further, to the extent the appeal also may be construed as a challenge to the district court's adherence at trial to the determination that the contracts were ambiguous, the district court's legal conclusions would still be reviewed de novo. *See Overton Distr., Inc. v. Heritage Bank*, 340 F.3d 361, 365-66 (6th Cir. 2003).[4]

There is no dispute that under Tennessee law, which governs this case, contract interpretation is a question of law. *Ray Bell Constr. Co. v. Tenn.*, 356 S.W.3d 384, 386 (Tenn. 2011). It is also settled that the "central task in interpreting a contract is to ascertain and to give effect to the intent of the contracting parties." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 465 (Tenn. 2012). The search for that intent "should focus on the four corners of the contract," "the circumstances in which the contract was

---

[4]Defendant argues for the first time in his reply brief that the evidence preponderates against the district court's credibility determinations. Not only would such factual findings be reviewed for clear error "giv[ing] due regard to the trial court's opportunity to judge the witnesses' credibility," Fed. R. Civ. P. 52(a)(6), but, more importantly, defendant has waived this argument by failing to present it in his initial brief on appeal, *see Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc).

made," and "the parties' actions in carrying out the contract." *Id.* (citations omitted). Moreover, the parties' intent may be manifested expressly or impliedly, and what is "'plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed.'" *Hamblen Cnty. v. City of Morristown*, 656 S.W.2d 331, 334 (Tenn. 1983) (citation omitted). A contract will be found to be ambiguous when its meaning is uncertain and it may be fairly understood in more than one way. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002).

We begin, as the district court did, with the pertinent language in the 1997 Purchase Contract:

## PURCHASE CONTRACT

WHEREAS David G. Patterson, Jr. ("Patterson") owns approximately 102 acres of land located in Williamson County, Tennessee, a description of which is attached hereto as Exhibit A (the "Property"); and

WHEREAS Gerald Anderson ("Anderson") desires to contract to purchase said Property;

THEREFORE, Patterson and Anderson agree as follows:

1.     Patterson agrees to sell to Anderson the Property or portions of the same during the following periods at the following prices:

A.     On or before 12 months from the date of
         execution of this contract:              $9,160.00 per acre

B.     On or before the end of the next
         succeeding 12 months:                    $10,435.00 per acre

C.     On or before the end of the next
         succeeding 6 months:                      $11,237.00 per acre

Each conveyance shall be for no less than thirty-four (34) acres. During the term of this Contract Patterson agrees to approve those changes to the

OSRD which are approved by the City of Brentwood.

    2.    The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and current property taxes, which shall be paid by Anderson.

Similarly, the 1999 Purchase Contract provided in pertinent part as follows:

<u>PURCHASE CONTRACT</u>

    WHEREAS David G. Patterson, Jr. ("Patterson") owns approximately 36.74 acres of land located in Williamson County, Tennessee, . . . (the "Property"); and

    WHEREAS Gerald Anderson ("Anderson") desires to contract to purchase said Property;

    THEREFORE, Patterson and Anderson agree as follows:

    1.    Patterson agrees to sell to Anderson the Property on or before January 9, 2000 for $9,073.00 per acre.

    Said conveyance shall be for no less than the entire Property. During the term of this Contract Patterson agrees to approve those changes to the OSRD which are approved by the City of Brentwood.

    2.    The conveyance(s) shall be by general warranty deed. The Property shall be conveyed subject to the OSRD zoning requirements, the encumbrances listed on Exhibit B hereto and all property taxes, which taxes shall be paid by Anderson.

It is evident, as the district court concluded, that although the contracts expressly bound plaintiff to sell the property to defendant, neither contract expressly stated that defendant agreed to buy the property back from plaintiff. Ultimately, however, we agree with the district court's assessment that the absence of such language leaves it unclear whether the contracts were intended to be option contracts (as defendant claimed) or repurchase agreements (as plaintiff claimed).

Arguing to the contrary, defendant asserts that the absence of any explicit obligation to repurchase the property demonstrates an unambiguous intent to create an option (and not an obligation) to repurchase the property as a matter of law. The Tennessee case cited by defendant in support defines an option as an obligation by which the owner of property binds himself to sell but leaves it to the other party's discretion whether to buy at a fixed price within a certain time. *City of Lebanon v. Baird*, No. 87-24-II, 1987 WL 12988, at *5 (Tenn. Ct. App. June 24, 1987) (quoting *Black v. Maddox*, 30 S.E. 723, 724 (1898)), *rev'd on other grounds*, 756 S.W.2d 236 (Tenn. 1988). This definition is not in dispute; the question, however, is whether the purchase contracts here unambiguously leave it to defendant's discretion whether to repurchase the property at all.

Here, ambiguity exists because the meaning is uncertain and the contracts are susceptible to being fairly understood either as granting an option to repurchase at defendant's discretion or as an agreement to repurchase the property in the future at the specified intervals and prices. It is relevant, albeit not dispositive, that the purchase contracts contained no mention of an option or any provisions for exercising the purported option; included recitals that expressed the defendant's (albeit nonbinding) desire to purchase the property; and were both titled and referred to in written extension agreements as "Purchase Contracts." Further, defendant retained responsibility to pay the taxes on the property held by plaintiff subject to the purchase contracts. It is also relevant that although the Real Estate Sales Contract that initiated the 1997 transaction also failed to include any express obligation to buy the property, there was never a

claim that it was actually intended to be an option contract.

Nor is the ambiguity resolved by defendant's claim that the fact that the arrangement was intended to be a loan was still consistent with an intention to create an option contract. Specifically, defendant explained that he deeded the property to plaintiff for an amount equal to half of its fair market value with the intention to create a non-recourse loan with the only remedy being plaintiff's retention of the property in the event of default. It is not clear whether defendant means to say repayment of the loan was optional; but, even so, it does not alter our conclusion that the purchase contracts did not unambiguously manifest an intention to create an option (and not an obligation) to repurchase the property. Because the purchase contracts were ambiguous in this regard, defendant's motion for summary judgment was properly denied and parol evidence was properly considered at trial to determine the parties' intent. *See Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).

### III.

Defendant filed a timely notice of appeal, followed by a timely motion to alter or amend judgment under Fed. R. Civ. P. 59(e). In that motion, defendant sought to reduce the damage award (and associated prejudgment interest) arguing for the first time that the district court failed to account for the approximately 29 acres of property that were repurchased by defendant (or, more accurately, defendant's mother). The district court denied the motion on the grounds that the previously filed notice of appeal divested the court of jurisdiction. Defendant filed an amended notice of appeal, as required by Fed. R. App. 4(a)(4)(B)(ii).

A district court generally loses jurisdiction over an action once a party files a notice of appeal. *See Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007). However, in civil cases, the timely filing of certain listed motions not only tolls the time to appeal but also suspends the effectiveness of a notice of appeal until the last of such motions is resolved. *See* FED. R. APP. P. 4(a)(4) Advisory Committee Notes (1993 Amendment) ("A notice [of appeal] filed before the filing of one of the specified motions or after the filing of a motion but before disposition of the motion is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals."). That is, the timely filing of a motion listed in Rule 4(a)(4)(A)—including a motion to alter or amend judgment under Rule 59—has been held to suspend or render dormant a notice of appeal "regardless of whether the motion was filed before or after the notice of appeal." *Ross v. Marshall*, 426 F.3d 751-52 (5th Cir. 2005); *see also Warren v. Am. Bankers Ins.*, 507 F.3d 1239, 1245 (10th Cir. 2007); *United States v. Silvers*, 90 F.3d 95, 98 (4th Cir. 1996). Accordingly, "[w]hen a party has filed a timely motion to alter or amend a judgment after a notice of appeal has been filed, the district court still retains jurisdiction to consider the motion." *O'Sullivan Corp. v. Duro-Last, Inc.*, 7 F. App'x 509, 519 (6th Cir. 2001) (citations omitted).[5]

Although defendant is correct that the district court was not divested of jurisdiction to decide the motion, defendant has made no attempt to demonstrate on appeal that this error was not harmless. A motion to alter or amend judgment under

---

[5]Indeed, the docket reflects that just after the district court entered its order, this court advised counsel that the initial appeal would be "held in abeyance until after the district court rules on pending motions, identified in Fed. R. App. P. 4(a)(4), and jurisdiction transfers to the Sixth Circuit Court of Appeals."

Rule 59(e) may be granted if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Interra Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

The record supports plaintiff's unrefuted contention that no claim for a "set off" or reduction to the damage calculation was raised at trial or in the proposed findings of fact and conclusions of law. Further, defendant's assertion that the damages should be reduced by the amount paid to plaintiff for the approximately 29 acres purchased by defendant's mother disregards the remainder of the transaction in which the proceeds were used by plaintiff to purchase the 36.74-acre parcel from defendant that became the subject of the 1999 Purchase Contract. Defendant offered no argument on appeal concerning the merits of his Rule 59 motion. There being no evident error of law, newly discovered evidence, intervening change in the law, or manifest injustice, remand is not required.

**AFFIRMED.**