FILED
08/29/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 17, 2018 Session

## GARY HAISER ET AL. v. MICHAEL McCLUNG ET AL.

**Appeal from the Chancery Court for Cumberland County**
**No. 2011-CH-508      Ronald Thurman, Chancellor**

---

## No. E2017-00741-COA-R3-CV

---

This case involves two consolidated actions brought by opposing boards of directors of a residential development community club, with each board claiming legitimacy. The plaintiffs to the original action were owners of real property in the development who held a special meeting in September 2011 in order to elect a new board of directors for the community club. The previous board of directors and defendants to the original action contested the validity of the election, claiming that none of the counted votes were cast by members in good standing. The defendants subsequently met in November 2011 and again in March 2012 to ratify their positions on the community club board of directors. In December 2011, the "new" board of directors, purportedly elected in September 2011, filed a declaratory judgment action against the original board of directors in the Cumberland County Chancery Court, requesting that the court declare which board of directors was legally in control. The complaint also requested that the court declare whether the purported developer properly possessed developer's rights and that the court award damages to the new board for breach of fiduciary duties by the original board. In April 2012, the original board filed a separate declaratory judgment action against the new board in the Cumberland County Chancery Court, making similar allegations and requesting a declaratory judgment, an injunction preventing the new board from acting on behalf of the community club, and damages for conversion. The trial court consolidated the two actions in July 2012 and conducted a bench trial on the matter over the course of seven non-consecutive days in 2015 and 2016. At the conclusion of trial, the court determined that the new board was prevented from challenging the developer's status due to a statute of limitations. The trial court further determined that neither board was legitimately in control and appointed a special master to conduct an accounting of dues and a supervised election. The trial court also directed each side to pay its own attorney's fees, ordering the boards to repay to the community club any funds used to pay attorney's fees. The original board was re-elected during the supervised election, and the special master determined that both sides had paid attorney's fees from their respective annual assessments collected. The trial court conducted a hearing on the parties' objections to

the special master's report before adopting the master's findings in total. The trial court thereby affirmed the original directors as current directors; ordered those directors to repay $54,157.41 to the community club funds; and ordered the plaintiffs to repay $143,513.55 to the community club funds. The plaintiffs have appealed. Determining that the trial court improperly relied upon a statute of limitations that is inapplicable to the plaintiffs' action, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion. We further reverse the trial court's alternative rulings for lack of evidentiary basis.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Melanie E. Davis, Maryville, Tennessee, for the appellants, Gary Haiser, Joel Matchak, John Moore, Gerald Nugent, Tina Williams, and Judy Scales Patterson.

Gregory C. Logue and Lindy D. Harris, Knoxville, Tennessee, for the appellees, Michael McClung; Phillip Guettler; Darren Guettler; and Moy Toy, LLC.

**OPINION**

I. Factual and Procedural Background

This appeal arises from litigation concerning a real estate community development in Cumberland County now known as "Renegade Mountain" or "Renegade Resort." In 1972, the Renegade Mountain Community Club ("RMCC") was established as a non-profit homeowners' association for Renegade Mountain, and by-laws and restrictive covenants were put in place to govern its operations. American Recreation Services, Inc. ("American Recreation"), a development corporation located in Delaware, and Recreation Unlimited, Inc. ("Recreation Unlimited"), a Tennessee development corporation, were the original developers that adopted the Declaration of Covenants and Restrictions in 1972 for Renegade Mountain, with the stated intention of developing "a residential and commercial community with streets, water and sewer systems, recreational facilities of various types, and other common facilities for the use and benefit of the owners of the said properties described herein."[1] This document granted the

---

[1] American Recreation was named in this case in June 2015 as an interested party to the original plaintiffs' amended declaratory judgment action. American Recreation was not present at trial and has not been otherwise involved in the case at bar.

2

developers the ability to plat and improve land and designate certain areas as "common areas" for the use of RMCC members. The "developer's rights" contained therein also entitled the developers to ten votes for each lot or living unit owned by a developer, as opposed to one vote of regular membership, without the obligation to pay yearly dues. Pursuant to the Declarations, the developer's rights were transferrable and not exclusive to American Recreation or Recreation Unlimited.

In 1987, RMCC adopted a set of by-laws and amended its restrictive covenants with a new set of controlling documents. The developed and undeveloped real property in Renegade Mountain owned by American Recreation also changed ownership several times over the course of the years along with, purportedly, the developer's rights. The Renegade Mountain development included, over time, a sports complex, a pool, a golf course, gated security, and a network of private roads.

By January 2000, an entity named Cumberland Gardens Acquisitions Corporation had acquired a large portion of real property in Renegade Mountain and allegedly the developer's rights as well. Cumberland Gardens Acquisitions Corporation began negotiating with Renegade Resort, LLC, regarding a prospective sale. Renegade Resort, LLC, ultimately purchased the real property at Renegade Mountain and interests therein held by Cumberland Gardens Acquisitions Corporation. Joe Looney, an attorney assisting Cumberland Gardens Acquisitions Corporation with the sale of its real property in Renegade Mountain, testified that developer's rights were not discussed during the negotiations concerning this sale. In contrast, Phillip Guettler, a controlling partner of Renegade Resort, LLC, testified that he entered into the transaction believing that the sale included developer's rights.

In March 2000, RMCC held a members' meeting announcing the sale of the properties owned by Cumberland Gardens Acquisitions Corporation to Renegade Resort, LLC. According to the minutes of RMCC taken at this meeting, Edward Curtis, Phillip Guettler, and Michael Haines were elected as directors and officers of RMCC.[2] In June 2000, a meeting of the members of RMCC was conducted. The record indicates that this was the last members' meeting that occurred until 2011.

According to the deposition of Joseph Wucher, Renegade Resort, LLC, began conveying improved and unimproved real property to different entities involved in the development of Renegade Mountain shortly after its acquisition of the real property and purported developer's rights from Cumberland Gardens Acquisitions Corporation. J.L. Wucher Company, owned by Mr. Wucher, was one such entity that purchased property in

---

[2] Phillip Guettler and his son, Darren Guettler, are both parties to this suit. For clarity, we will refer to them by full name throughout this opinion.

Renegade Mountain. Another such entity was LKM Group, LLC, which executed a contract to purchase the unimproved real property and developer's rights of Renegade Resort, LLC, in September 2005. Also in 2005, Mr. Wucher became a member of the RMCC Board of Directors.

On October 26, 2005, a document entitled, "Amended and Restated Declaration of Amended Covenants and Restrictions for Renegade Mountain" ("First 2005 Amendments"), was recorded in the Cumberland County Register of Deeds office. Among the other changes to the existing declarations and restrictive covenants of Renegade Resort, the First 2005 Amendments granted developer's rights specifically to Renegade Resort, LLC. The First 2005 Amendments were dated October 20, 2005, and signed by Mr. Curtis as president of RMCC and Mr. Wucher as a managing member of Renegade Resort, LLC, a "Nevada Limited Liability Corporation."

Also on October 26, 2005, two additional documents, entitled, "By-laws of Renegade Community Club" ("2005 By-laws") and "Renegade Resort First Amendment to Declaration of Covenants and Restrictions" (collectively, "Second 2005 Amendments"), were filed in the Cumberland County Register of Deeds office. The Second 2005 Amendments are similar to the First 2005 Amendments, with one exception being the specification of "Renegade Resort, LLC, a Tennessee limited partnership," as the developer (emphasis added).[3] The Second 2005 Amendments were signed by the same parties on the same day as the First 2005 Amendments.

By 2008, Renegade Resort, LLC, became involved in a lawsuit with LKM Group, LLC, ("LKM Group") over the purchase contract executed in September 2005. The lots owned by LKM Group were later sold to TIG Holdings, LLC, ("TIG Holdings") in March 2011 through a foreclosure sale. On September 28, 2010, Renegade Resort, LLC, and J.L. Wucher Company conveyed the improved and unimproved real property they respectively owned in Renegade Mountain to Moy Toy, LLC ("Moy Toy"), a company owned in part by Michael McClung and, indirectly, Phillip Guettler. Renegade Resort, LLC, and J.L. Wucher Company also separately conveyed any existing developer's rights they respectively claimed in Renegade Mountain to Moy Toy.

After Moy Toy purchased the improved and unimproved real property and purported developer's rights, Phillip Guettler, acting as the vice president of RMCC, reinstated RMCC as a non-profit corporation with the Tennessee Secretary of State.[4] On

---

[3] We will, at times, collectively refer to the First and Second 2005 Amendments simply as the "2005 Amendments."

[4] The record reflects that RMCC was administratively dissolved in 2007 based on the failure to file an annual report.

June 23, 2011, Phillip Guettler purportedly appointed himself and Mr. McClung to the RMCC Board of Directors.

Subsequently, acting on behalf of RMCC, Mr. McClung and Phillip Guettler ceased maintenance and upkeep of the roads, amenities, street lighting, and private security at Renegade Mountain. By December 2010, the roads were no longer being cleared of winter snow or being repaired, the street lights had been shut off, and the private security had been removed. Throughout 2011, several homeowners of Renegade Mountain attempted to contact the directors of RMCC, expressing their dissatisfaction with the state of affairs within Renegade Mountain. These homeowners requested that a special meeting be called and also requested access to the financial records and membership lists of RMCC. Receiving no response, a number of dissatisfied homeowners, believing themselves to be members in good standing, organized a special meeting to elect a new RMCC Board of Directors to RMCC and to amend the RMCC by-laws.

On August 24, 2011, TIG Holdings, the holder of 325 of the LKM Group lots sold at a foreclosure sale, executed a document granting Mr. McClung the proxy votes associated with the lots. On September 2, 2011, the homeowners held the special meeting, which Mr. McClung attended as president of RMCC. At the meeting, Mr. McClung appeared and immediately attempted to adjourn, alleging that none of the homeowners calling the special meeting were members in good standing. The gathered homeowners refused to allow adjournment.

During the September 2, 2011 meeting, the homeowners voted the existing Board of Directors out of office with an ostensible majority vote. Mr. McClung challenged this vote by claiming proxy votes for TIG Holdings, which outnumbered the collective votes of the gathered homeowners. The homeowners rejected these proxy votes as invalid, however, asserting that the TIG Holdings' votes were not properly registered in advance and that TIG Holdings was not a member in good standing, having never paid dues since its purchase of real property in Renegade Mountain. The homeowners also rejected Mr. McClung's assertion that Moy Toy could claim ten votes for each of the lots it owned through its purported developer's rights. As a result, Mr. McClung was only able to cast three votes.

After voting the existing RMCC Board out of office, the homeowners voted in a replacement Board ("Owner Board") for RMCC with Joel Matchak, Gary Haiser, and Judy Patterson elected as directors. The homeowners at the September 2, 2011 meeting also approved a new set of amendments to the RMCC by-laws. Contesting the validity of the September 2, 2011 meeting, Mr. McClung and Phillip Guettler executed a document on September 22, 2011, appointing Phillip Guettler's son, Darren Guettler, to the Board

5

of Directors of RMCC. Mr. McClung, Phillip Guettler, and Darren Guettler later held a "properly noticed Annual Meeting of Members" on March 1, 2012, and voted to ratify their positions on the RMCC Board of Directors ("Moy Toy Board").

On December 22, 2011, Mr. Haiser and Mr. Matchak, identifying themselves as acting members of the Owner Board, filed a complaint in the Cumberland County Chancery Court ("trial court") on behalf of RMCC against Mr. McClung, Mr. Haines, Phillip Guettler, Mr. Wucher, and Moy Toy ("Owner Complaint").[5] Mr. Moore and Mr. Nugent were also plaintiffs to this complaint as property owners and members of RMCC. The complaint alleged, *inter alia*, that Renegade Mountain had fallen into a state of disrepair due to the neglect of the defendants and that the Owner Board was properly elected as the RMCC Board of Directors on September 2, 2011, despite the Moy Toy Board's continuing claims. The plaintiffs requested a declaratory judgment as to which Board of Directors controlled RMCC and which set of restrictions and by-laws were in legal effect, as well as damages for breach of fiduciary duty.

Shortly after the Owner Complaint was filed in the trial court, Moy Toy purchased the 325 lots in Renegade Mountain owned by TIG Holdings. On February 23, 2012, Mr. McClung and Phillip Guettler filed a motion to dismiss, primarily alleging that the plaintiffs had not pled with particularity as required by Tennessee Rule of Civil Procedure 10.03 when filing a claim based upon a written instrument. Moy Toy and Mr. Wucher subsequently joined in the motion to dismiss. On April 10, 2012, the Moy Toy Board filed a separate action in the trial court, individually and on behalf of RMCC, against the individuals on the Owner Board ("Moy Toy Complaint"). The Moy Toy Complaint essentially mirrored the allegations of the Owner Complaint and sought a declaratory judgment determining which Board of Directors was properly in place, an injunction preventing the Owner Board from acting on behalf of RMCC, and damages for allegedly converted funds that the Owner Board had collected as annual assessments.

On April 19, 2012, the Owner Board filed a motion to amend its complaint in response to the motion to dismiss filed concerning the Owner Complaint. Following a hearing on the motions, the trial court entered an order on May 8, 2012, denying the motion to dismiss and allowing the Owner Board to file the proposed amendment to its Complaint.

On May 14, 2012, Mr. McClung and Phillip Guettler filed a joint answer to the amended Owner Complaint, denying all substantive allegations and alleging as an affirmative defense that the declaratory judgment action challenging the by-laws was

---

[5] Mr. Haines, a previous president of the RMCC Board of Directors, did not file an answer to the Owner Complaint, and the trial court entered a default judgment against him on February 26, 2013.

missing indispensable parties. According to the answer, "[i]n order to make such a challenge, the Plaintiffs will be required to join each and every owner subject to the Bylaws and Declarations of Renegade [Mountain]." On May 14, 2012, the Owner Board also filed an answer to the Moy Toy Complaint, denying all substantive allegations and the validity of the Second 2005 Amendments. On May 23, 2012, Moy Toy filed an answer to the amended Owner Complaint, denying all substantive allegations and arguing that it "should be dismissed from this case in that there are no factual allegations against it and it specifically denies any wrongdoing of any kind." On June 12, 2012, Mr. Wucher filed an answer to the amended Owner Complaint, either denying the substantive allegations or asserting a lack of knowledge.

On June 29, 2012, the trial court entered an order allowing the Moy Toy Board to join John Peters as a defendant to the Moy Toy Complaint. On July 18, 2012, the trial court entered an order consolidating the Moy Toy Complaint and the Owner Complaint into a single proceeding.

On December 13, 2012, Mr. Wucher filed a motion for summary judgment in the trial court, arguing that he had resigned from the RMCC Board of Directors on October 12, 2010, and was therefore not individually involved with either Board of Directors as pertinent to the controversy. Additionally, Mr. Wucher argued that he was not liable for a breach of fiduciary duty due to an expiration of Tennessee's statute of limitations governing the claim. *See* Tenn. Code Ann. § 48-58-601(a) (2012) (establishing a one-year statute of limitations and a three-year statute of repose for a director's breach of fiduciary duty). On June 10, 2013, the trial court entered an agreed order granting Mr. Wucher's motion for summary judgment and dismissing him from the consolidated action.

On July 23, 2013, the Owner Board filed another motion to amend its complaint, adding a request that the trial court order Moy Toy to convey real property classified as "common areas" to RMCC and a request for class action certification in order to include other property owners in Renegade Mountain as plaintiffs.[6] The trial court entered an order on September 11, 2013, allowing the Owner Board to amend their complaint but setting the issue of class certification for hearing. Following a hearing, the trial court entered an order denying class action certification on October 9, 2013, determining that the Owner Board "failed to submit a *prima facie* case on all of the elements [of Tennessee Rule of Civil Procedure 23] so that the request for class action certification

---

[6] Although the individuals constituting the Owner Board were not the only plaintiffs to the Owner Complaint, for conciseness, we will refer to the collective parties associated with the Owner Complaint simply as the "Owner Board" and the collective parties associated with the Moy Toy Complaint simply as the "Moy Toy Board" when discussing the parties' actions in court.

was denied without [the Moy Toy Board's] having to place evidence in the record rebutting [the Owner Board's] evidence." The trial court subsequently granted the Owner Board ninety days to seek further amendment of its complaint.

On April 11, 2014, the Moy Toy Board filed a motion to "unconsolidate" the actions and renewed an earlier motion requesting that the trial court appoint a special master to conduct a court-supervised election to determine the Board of Directors for RMCC. The trial court denied the motion to separate the actions in an order entered May 16, 2014, and held the motion to conduct a special election in abeyance, stating that "this Court will decide legal issues relating to the right to vote in [RMCC] elections. After such decision is made by the Court, the Court will re-visit whether the appointment of a Special Master would be appropriate to oversee an election of the RMCC."

On March 31, 2015, the Owner Board filed a motion for leave to amend the Owner Complaint to reflect an alteration of its declaratory judgment action. The third amended complaint challenged Moy Toy's purported developer's rights, requested that the trial court order Moy Toy to convey title to all "Common Property" in Renegade Mountain to RMCC, and requested that the court declare RMCC the controlling entity for the private roads of Renegade Mountain. The third amended complaint did not specifically challenge the validity of the First or Second 2005 Amendments. On June 4, 2015, the trial court entered an order allowing the proposed amendment on the condition that the Owner Board join "the [previous] known developer entities in the chain of title as additional necessary parties." On June 17, 2015, the Owner Board filed the third amended complaint.

In the third amended Owner Complaint, the individual members of the Owner Board, with the exception of Ms. Patterson, were listed as plaintiffs, along with Mr. Peters, Thomas Bauer, and Wendell Blair. The complaint listed as defendants Mr. McClung, Phillip Guettler, Darren Guettler, Moy Toy, and eighteen other entities that were previous developers of Renegade Mountain.[7] The Moy Toy Board filed an answer to this amended complaint, again denying the substantive allegations. The Moy Toy Board admitted the allegations concerning the roads and common areas of Renegade Mountain, however, "to the extent that the same aver that Moy Toy claims to own the roads in Renegade [Mountain] and, thus, has control over said roads and their use. For further answer, Moy Toy does, in fact, own the roads." Moy Toy also averred that the developer's rights belonged to Renegade Resort, LLC, based upon the First 2005

---

[7] The eighteen additional parties to this consolidated action were not present at trial, have not contested the proceedings, and are not parties to this appeal. We have omitted the names of these additional parties for conciseness.

Amendments and would pass to any successor in title, which Moy Toy was pursuant to the bill of sale it received from Renegade Resort, LLC.

On November 3, 2015, the Moy Toy Board filed a motion for partial summary judgment on the issue of whether the TIG Holdings proxy votes were properly discounted in the September 2, 2011 meeting. On November 11, 2015, the Owner Board filed a motion for partial summary judgment on the issue of whether Moy Toy possessed developer's rights. On December 15, 2015, the trial court entered an order denying the Moy Toy Board's motion for partial summary judgment, having discerned the existence of genuine issues of material fact. On December 17, 2015, the trial court similarly denied the Owner Board's motion for partial summary judgment due to existing issues of material fact.

The trial court conducted a bench trial over the course of seven non-consecutive days between December 15, 2015, and April 14, 2016. The court heard testimony from Mr. Nugent; Mr. Matchak; Phillip Guettler; Darren Guettler; Mr. McClung; Mr. Moore; Norman Renaud, a homeowner in Renegade Mountain; Wendell Harkleroad, a property owner and developer of approximately 100 acres in Renegade Mountain; Terry Stephens, a certified public accountant for RMCC under the Moy Toy Board; and Joe Looney, the attorney employed by Cumberland Gardens Limited Partnership prior to and during the January 2000 acquisition by Renegade Resort, LLC.[8] The trial court also accepted a deposition from Mr. Wucher and heard testimony from two expert witnesses: Jack Atkins, a Crossville attorney, and Ron Hill, a certified public accountant.

On July 1, 2016, the trial court entered an order that contained several findings of fact as well as primary rulings and "alternative rulings," anticipating the possibility of error in its conclusions of law. As pertinent to the issues on appeal, the trial court stated the following:

1.  Neither . . . the [Owner] Board of Directors . . . nor the [Moy Toy] Board of Directors . . . are the proper and correct Board of Directors for the RMCC. The Moy Toy Board, being Phillip Guettler, Michael McClung and Darren Guettler, was not elected by the membership. They appointed themselves and their family as Board members. This was not in compliance with State statutes or the relevant By-Laws. This Board existed in name only without complying with the By-Laws or State laws.

---

[8] Mr. Harkleroad was a general manager of Eagle's Nest, LLC, which was in the process of developing its holdings in Renegade Mountain by the time of trial. Any claimed developer's rights of Eagle's Nest, LLC, are not challenged in the instant action and are not part of the issues on appeal before this Court.

2. Further, the Owner Board was not validly elected because the September 2, 2011, special called meeting where they were elected was not valid. In order to have a special called meeting, 10% of the members in good standing had to call the meeting. The Court finds that the year in question for determining good standing status was 2011. There were only eleven owners who paid their dues in 2011. None of these eleven people called the September 2, 2011 meeting. Accordingly, because the meeting was not properly called, the results of the meeting are not valid.

3. Nevertheless, the Court finds that the Plaintiffs in the [Owner Complaint] acted in good faith in attempting to call the September 2, 2011 meeting. The Court finds that the residents in Renegade [Mountain] made repeated requests to the Moy Toy Board to see the books and minutes of the RMCC. These requests were ignored by the Moy Toy Board.

4. Applying a reasonableness standard, the Court finds that any resident in Renegade [Mountain] would have been upset by services being terminated in Renegade [Mountain] in 2010-2011.

* * *

6. As an alternative ruling; in the event the September 2nd, 2011 meeting is determined by the Court of Appeals to have been legally called, the proxy of TIG Holdings, LLC, which was attempted to be voted at the September [2], 2011 meeting, was properly not counted or considered valid at this meeting. The Court relies on Sections 2.05 to 2.08 of the By-Laws and the fact that the transfer of these lots at the foreclosure sale to TIG Holdings, LLC terminated membership of the lots' owner(s) and there was no application made for membership as required for voting rights to attach to the new owners of these lots.

7. The Court finds that the 2005 Restrictions of record in [the First 2005 Amendments] and the 2005 By-Laws of record in [the Second 2005 Amendments] are valid because the statute of limitations of six (6) years has run on challenging them. After this issue was decided on directed verdict, the [Moy Toy Board's] evidence on the issue was pretermitted. If the issue is appealed, [the Moy Toy Board] will

have an opportunity to make an offer of proof on the issue of the validity of the 2005 Bylaws and Restrictions.

8.    As to the issue of notice of the recordation of the Restrictive Covenants and By-Laws from 2005, the notice the Court relies on is the notice to all the world when the documents were recorded in the Register of Deeds Office.

9.    As an alternative ruling, if the Court of Appeals determines that the statute of limitations issue does not bar the challenge of the prior recorded Restrictions and By-Laws, the Court finds that based on the evidence that the By-Laws and Amendments recorded in 2005 are invalid because they were not enacted in accordance with their terms.   In such event, the By-Laws and Restrictions in 1987 . . . would be the valid By-Laws and Restrictions for Renegade [Mountain].   The 2005 Restrictions and By-Laws were never approved by the members of the RMCC which were required for the amendment to be valid.

\* \* \*

11.    The Plaintiffs in [both cases] will bear their own attorney's fees. The Special Master appointed herein will make a determination as to the amount of attorney's fees and costs paid from money from RMCC annual assessments paid to either Board and require disgorgement of the same.

12.    In this case, the Court under its equity jurisdiction, orders a special meeting of the members of the RMCC to be held under the terms and conditions below.

13.    Further this Court orders an accounting from the Moy Toy Board and from the Owner Board as to monies paid to and distributed from each Board since January 1, 2010.   Payments from owners will be individually set forth. . . .

14.    After the accounting is presented, the Court orders that all members in the RMCC and/or owners in Renegade [Mountain] will be given thirty (30) days to have their dues paid so they can be in good standing for the special called meeting.   Notice to such owners will be done by the Special Master appointed below.

11

\* \* \*

18.    Other than day to day maintenance or emergencies, the funds on each side that have been collected in dues are hereby frozen and an accounting will take place as set forth above. Any emergency expenditures must be documented.

\* \* \*

21.    The Developer is entitled to ten votes per lot and is exempt from the payment of RMCC dues as set out in [the 2005 Amendments]. The Court finds, as discussed supra, that [the Owner Board] cannot affirmatively challenge Moy Toy's developer rights because the statute of limitations had run out before [the Owner Board] filed [the Owner Complaint] in this Court[.] In so ruling, however, the Court has not ruled or determined that Moy Toy is the developer under the 2005 Restrictions which are [the First 2005 Amendments], where Renegade Resorts, LLC named itself as developer. The court has only determined that the [Owner Board] cannot obtain an affirmative ruling from this court that Moy Toy is not the developer because the statute of limitations has run out on that claim for declaratory relief before the [Owner Complaint] was filed. As an alternate ruling in the event the Court is incorrect on the statute of limitations issue, the Court finds that the evidence in this case is that Moy Toy, LLC received no developer rights when it purchased what is now Renegade [Mountain], then Renegade Resorts, LLC and or any other entity. The Court bases its ruling on the testimony of Joe Looney and Jack Atkins, who the Court finds credible. There is no evidence by deed or contract of the legitimate transfer of developer rights to Moy Toy, LLC. The Court finds that though [the First 2005 Amendments] states developer rights existed, they did not exist because there was a breach in title that occurred and these rights were not properly conveyed in the chain of title or possession of such rights to Moy Toy, LLC or its predecessor in title except through what is stated in the 2005 Amended Restrictions.

\* \* \*

23.    Regarding common areas, this Court has previously ruled by directed verdict that the legal title in such common areas remains

12

with the Developer under both the 1987 and the 2005 Restrictions on file. The amenities that are unplatted such as the sports park belong to Moy Toy, LLC and it is up to Moy Toy, LLC to transfer title if it so chooses. If the Court is incorrect on the statute of limitations ruling then the Developer doesn't exist.

24.     The Court finds that under [the 2005 Amendments], the RMCC has the power to maintain and control the platted roads in Renegade [Mountain.] Subject to legal, existing easements, Moy Toy, LLC has the power to maintain and control the unplatted roads owned by it with the exception of the entrance road, Renegade Mountain Parkway, and the bridge located at the entrance to Renegade Mountain, which shall be maintained and controlled by the RMCC.

* * *

32.     Moy Toy, LLC, Michael McClung and Phillip Guettler had unclean hands in its action towards the residents in this matter, and the [Owner Board] acted in good faith.

33.     The Court finds that there were credibility concerns with Phillip Guettler, Michael McClung and Darren Guettler. There were some credibility concerns as well with John Moore in some of his testimony. The other residents in Renegade [Mountain] who testified were credible, and the Court accepted their testimony as truth.

Following the trial court's ruling, the special master proceeded to collect dues, determine members in good standing, and subsequently conducted the court-ordered election of the RMCC Board of Directors on August 25, 2016. During this special election, Moy Toy was allowed to cast 3,363 votes due to the increased voting ratio per lot allowed by its status as developer. As a result, Mr. McClung, Phillip Guettler, and Darren Guettler were elected to the RMCC Board of Directors with 3,373 votes each.

On October 3, 2016, the special master conducted a second hearing to address the accounting of each Board's attorney's fees and maintenance funds. During the proceedings, Mr. Stephens, a licensed certified public accountant, verified the accounting records of the Moy Toy Board. Although the Owner Board allegedly kept detailed records separating annual dues assessments and maintenance costs from legal fund donations and expenses, it is undisputed that the transactions had been commingled in one banking account. The Owner Board depended on the testimony of Mr. Moore, the

assistant treasurer at the relevant times, to verify the separation of funds. The special master, however, found credibility issues in Mr. Moore's testimony and determined much of the evidence presented by the Owner Board to be inadmissible as hearsay.

On October 6, 2016, the special master filed a report on the proceedings, which stated the following findings as pertinent to this appeal:

1.   I hereby find the amount of attorney fees and costs paid from money which originated out of annual assessments paid to either board is as follows:

2.   The [Moy Toy Board] expended attorney fees paid from annual assessments which should be repaid to the newly elected board in the amount of Fifty-Four Thousand One Hundred Fifty-Seven Dollars and 41/100 (**$54,157.41**). Such funds were expended over a three year period as set out herein. . . .

3.   The [Owner Board] expended attorney fees in the amount of One Hundred Forty-Three Thousand Five Hundred Thirteen Dollars and 55/100 ($143,513.55) over a six year period as set out below. Per Mr. Moore's testimony these legal funds were co-mingled in one bank account with annual assessment funds. Mr. Moore testified to the fact that a separate legal fund was accounted for as a line item within this co-mingled account. He further testified that he personally prepared the accountings which were submitted to the Court and to the Special Master to review. I found Mr. Moore's testimony to be self-serving and to lack credibility. Mr. Moore contradicted himself when questioned about expenditures and admitted to paying himself, his wife, his daughter, and his company, Americas Best Corp., from funds collected from annual assessments. He further testified that he made payments to himself after which time that the Court had frozen the bank accounts. At the hearing, no proof was presented related to the source of the deposits of legal funds from private contributors other than Mr. Moore's testimony. Therefore, I find that the [Owner Board] expended attorney fees paid from annual assessments which should be disgorged and paid to the newly elected board in the amount of One Hundred Forty-Three Thousand Five Hundred Thirteen Dollars and 55/100 (**$143,513.55).**

On October 17, 2016, the Moy Toy Board filed a limited objection to the special master's report, requesting that if the trial court altered the amount of disgorgement

14

applied to the Owner Board, the same standard of alteration should be applied to the Moy Toy Board as well. On November 2, 2016, the Owner Board filed a motion for consideration of the special master's report and objection thereto, challenging the findings as "improper, unjust and unfair." The Owner Board argued that the special master instituted an inconsistent standard of evidence because the master had stated at the conclusion of the August 25, 2016 hearing that he would consider the accounting reports as true "unless at [the] hearing . . . somebody can prove otherwise that the money was not spent for a road or was spent inappropriately." The Owner Board argued that although the legal funds were commingled with the assessment funds, the monies were separately accounted. The Owner Board attached as additional proposed evidence for the trial court's consideration several exhibits consisting of financial statements and affidavits from residents of Renegade Mountain stating that their legal fund donations were voluntary and not paid as annual assessments.

Following a hearing, the trial court overruled both objections and adopted the special master's report in its entirety through an order entered on January 23, 2017. In a separate order entered on the same day, the trial court incorporated its previous rulings from the June 29, 2016 hearing; affirmed the August 25, 2016 election of the RMCC Board of Directors; ordered the Moy Toy Board to repay $54,157.41 to RMCC; and ordered the Owner Board to repay $143,513.55 to RMCC. The trial court also ordered the Owner Board "to deliver all bank accounts, funds, accountings, books, records, e-mail lists, intellectual property, and any and all personal property of [RMCC] to the Board of Directors of [RMCC]."

On February 17, 2017, the Moy Toy Board filed a proof of payment of $54,157.41 to the RMCC. On February 22, 2017, the Owner Board filed a motion to revise the orders entered on January 23, 2017, requesting, *inter alia*, that the trial court find "that money paid to the attorney's fees fund is subject to refund as dues overpayment, to the extent it constitutes payment in excess of actual dues owed." The trial court incorporated its January 23, 2017 orders into a final order and judgment entered on March 10, 2017, and denied the Owner Board's motion to revise orders in an order entered March 30, 2017. The Owner Board timely appealed.

II. Issues Presented

The Owner Board presents eight issues on appeal, which we have restated as follows:

1.   Whether the trial court erred by applying a six-year statute of limitations to bar the Owner Board's challenge to Moy Toy's purported developer's rights.

15

2. Whether the trial court erred by declining to find that the statute of limitations had been tolled.

3. Whether the trial court erred by recognizing the First 2005 Amendments instead of the Second 2005 Amendments with respect to the named developer of Renegade Mountain.

4. Whether the trial court erred by determining that the owners calling the special meeting on September 2, 2011, were not members of RMCC in good standing.

5. Whether the trial court erred by determining that Moy Toy owned a fee simple interest in the "common areas" of Renegade Mountain and was under no obligation to convey the common areas to RMCC or allow RMCC members to use them.

6. Whether the trial court erred by determining that Moy Toy had a right to control the unplatted roadways of Renegade Mountain.

7. Whether the trial court erred by adopting the special master's report concerning legal expenses paid by both sides from annual assessments.

8. Whether the trial court erred by determining that Moy Toy maintained developer's rights in RMCC and was able to vote as the developer of RMCC in the special election held on August 25, 2017, with extra votes and without paying dues for its owned lots.

The Moy Toy Board presents two additional issues, which we have similarly restated as follows:

9. Whether the trial court erred by making an alternative finding that the proxy votes allegedly granted to Moy Toy for the September 2, 2011 meeting were properly discounted at the meeting.

10. Whether the trial court erred by making alternative findings with respect to the developer's rights of Moy Toy and the validity of the 2005 Amendments when the trial court had pretermitted the Moy Toy Board's evidence on these issues.

16

## III. Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013); *Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011).

In this matter, the trial court made certain alternative rulings in an attempt to prevent further protracted litigation. With regard to alternative rulings, we have previously noted that this Court may exercise its discretion to address alternative rulings made by the trial court. *See* Tenn. R. App. P. 13(b); *see also Am. Heritage Apartments, Inc. v. Hamilton Cty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 51 (Tenn. 2016) (explaining that "there are many cases in which this approach [of addressing an alternative ruling] is appropriate, serving judicial efficiency and avoiding unnecessary litigations of the parties" while holding that affirming an alternative ruling for "a pivotal threshold issue such as certification of a class" was not appropriate); *Stovall v. UHS Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *8 n.8 (Tenn. Ct. App. Apr. 22, 2014), *overruled on other grounds by Davis ex rel. Davis v. Ibach*, 465 S.W.3d 570 (Tenn. 2015) ("[W]e have found several cases that have considered alternative rulings by the trial court, or even encouraged such rulings.").

## IV. Developer's Rights of Moy Toy

The Owner Board's primary issues on appeal directly relate to Moy Toy's purported status as developer of RMCC, resulting in Moy Toy's possession of the associated "developer's rights" as outlined in the declarations and by-laws of Renegade Resort and RMCC. The Owner Board's third amended complaint alleged that "through discovery, it appears that such developer rights were never conveyed to Moy Toy, LLC's predecessors in title. As such, such 'developer rights' do not exist for Moy Toy, LLC because the parties that purportedly gave Moy Toy, LLC such rights did not have them to

17

begin with."[9]   The Moy Toy Board, as an affirmative defense in its answer to the third amended complaint, averred, *inter alia*, that "[p]ursuant to the [First 2005 Amendments], which Declaration is not being challenged, the developer rights belonged to Renegade Resort, LLC at the time the Declaration was drafted and would pass to any successor in title through an instrument specifically conveying such developer rights."  The trial court ruled in favor of the Moy Toy Board regarding this affirmative defense via a directed verdict during trial and through its July 1, 2016 order by stating that the First 2005 Amendments "are valid because the statute of limitations of six (6) years has run on challenging them."

The Owner Board has appealed the trial court's application of the six-year statute of limitations on two alternate theories.  First, the Owner Board contends that the six-year statute of limitations preventing "[a]ctions on contracts not otherwise expressly provided for" was not applicable to their claim because the claim did not sound in contract law. *See* Tenn. Code Ann. § 28-3-109(a)(3) (2017); *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 147-48 (Tenn. 2015) (explaining that "to determine the governing statute of limitations, a court must ascertain the 'gravamen of the complaint.'").  Alternatively, the Owner Board contends that, if the six-year statute of limitations is applicable to the case at bar, the cause of action should be found to have accrued from the time of actual notice to the RMCC members and not from the time of recordation of the First 2005 Amendments.  Upon a thorough examination of the record and applicable law, we determine that the gravamen of the Owner Board's complaint was not a challenge to the validity of the 2005 Amendments.  We further determine that a statute of limitations is only applicable to <u>actions commenced in court</u> after a set period of time, as more fully explained below.

## A.  Statute of Limitations

Statutes of limitations in Tennessee operate to bar actions commenced after a specified time. *See Harrison v. Schrader*, 569 S.W.2d 822, 827 (Tenn. 1978) (explaining that a statute of limitation does not eliminate a remedy for a civil wrong but rather provides that a claim cannot be brought after a certain amount of time has passed).  We note at the outset that statutes of limitations "are shields, not swords" and that "they reflect 'a societal choice that actions must be brought within a certain time period.'" *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (internal citations omitted).  As our Supreme Court has explained:

---

[9] The Owner Board's third amended complaint was the final amended complaint filed and, therefore, the operative complaint with respect to a review of these proceedings. *See Bowers v. Estate of Mounger*, 542 S.W.3d 470, 481-82 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Nov. 16, 2017).

We have frequently pointed out that statutes of limitations (1) promote stability in personal and business relationships, (2) give notice to defendants of potential lawsuits, (3) prevent undue delay in filing lawsuits, (4) "avoid the uncertainties and burdens inherent in pursuing and defending stale claims," and (5) "ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness." Accordingly, the courts construe exceptions to statutes of limitations carefully to assure that they are not extended beyond their plain meaning.

*Id.* (internal citations omitted).

When interpreting any statutory language, "'[o]ur primary objective . . . is to carry out the intent of the legislature without unduly broadening or restricting the statute.'" *Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 400 (Tenn. Ct. App. 2013) (quoting *Nichols v. Jack Cooper Transp. Co.*, 318 S.W.3d 354, 359-60 (Tenn. 2010)). "When a statute is clear, we apply the plain meaning without complicating the task, and simply enforce the written language." *Id.* (citing *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 101-02 (Tenn. 2006)).

The six-year statute of limitations that the trial court applied to the Owner Board's third amended complaint provides in pertinent part:

> (a)  The following <u>actions</u> shall be commenced within six (6) years after the cause of action accrued:
>
> \* \* \*
>
> (3)  <u>Actions</u> on contracts not otherwise expressly provided for.

Tenn. Code Ann. § 28-3-109(a) (emphasis added). "'Action' in this title includes motions, garnishments, petitions, and other legal proceedings in judicial tribunals <u>for the redress of civil injuries</u>." Tenn. Code Ann. § 28-3-101 (2017) (emphasis added). Tennessee courts have generally examined restrictive covenants as contracts, meaning that the application of § 28-3-109(a)(3) to an action challenging the validity of restrictive covenants would be appropriate under certain circumstances. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 475 (Tenn. 2012) ("The restrictive covenants in the Declaration in this case are property interests that run with the land, but they arise from a series of overlapping contractual transactions. . . . Accordingly, they should be viewed as contracts and examined as such."); *Hannewald v. Fairfield Cmtys., Inc.*, 651 S.W.2d 222, 227 (Tenn. Ct. App. 1983) (applying the six-year statute of limitations contained in § 28-

3-109(a)(3) to an action seeking to collect dues based on covenants and restrictions). As pertinent to this matter, however, we discern no language in Tennessee Code Annotated § 28-3-109(a)(3) prohibiting courts from examining the validity of a contract or other document proffered as evidence but not specifically challenged in an action as defined by § 28-3-101.

The pleadings indicate that the Owner Board did not in its third amended complaint bring an action challenging the validity of the 2005 Amendments, which might have been potentially barred by a statute of limitations. Instead, the Owner Board simply challenged whether Moy Toy possessed developer's rights. In response, the Moy Toy Board relied upon the First 2005 Amendments as evidence of Moy Toy's alleged developer's rights in order to prove its affirmative defense that Moy Toy received the developer's rights pursuant to its agreement with Renegade Resort, LLC, which allegedly received such rights as a result of the First 2005 Amendments. As such, the Moy Toy Board bears the burden of proving the validity of the First 2005 Amendments. *See Winford v. Hawissee Apartment Complex*, 812 S.W.2d 293, 295 (Tenn. Ct. App. 1991), *perm. app. denied* (Tenn. June 10, 1991) ("The burden of proof is on the party having the affirmative of the issue, and the burden of proof never shifts.").

Despite the fact that the third amended complaint did not challenge the validity of the First 2005 Amendments, the trial court found that the validity of the First 2005 Amendments could not be challenged based on the six-year statute of limitations. However, the Moy Toy Board's reliance on the First 2005 Amendments in its answer does not constitute an "action" as defined by Tennessee Code Annotated § 28-1-101. The statute of limitations contained in Tennessee Code Annotated § 28-3-109(a)(3) does not operate to bar the litigation of an issue introduced as a defense rather than a claim. *See generally Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 416 (1998) (explaining that "limitation statutes 'are aimed at lawsuits, not at the consideration of particular issues in lawsuits.'").

The transcript of the proceedings during trial indicates that the trial court granted a directed verdict on the issue of the six-year statute of limitations based on this Court's ruling in *Grand Valley Lakes Prop. Owners Ass'n, Inc. v. Burrow*, 376 S.W.3d 66 (Tenn. Ct. App. 2011), *perm. app. denied* (Tenn. May 18, 2012). In *Grand Valley Lakes*, Grand Valley, a homeowner's association to a platted subdivision in Tennessee, filed a complaint against one homeowner, seeking to recover unpaid assessments on the homeowner's real property in the subdivision. *Id.* at 71. Grand Valley initiated the lawsuit in 2002 and was seeking payment of dues based on a rate that had been increased in 1998 as the result of an amendment to the subdivision's restrictive covenants. *Id.* After some discovery and subsequent amendments to Grand Valley's complaint, the homeowner filed an answer in 2007, denying the validity of the 1998 amendments. *Id.* at

72. The homeowner concomitantly filed a counter-complaint seeking, *inter alia*, a declaration from the court that the 1998 amendments were invalid. *Id*. The case came to this Court on appeal after the lower court granted summary judgment to Grand Valley, holding in pertinent part that the 1998 amendments were properly adopted and that the homeowner's counter-claims were time-barred by the statute of limitations. *Id.* at 73.

Reviewing in depth the issue of whether the *Grand Valley Lakes* 1998 amendments were properly adopted in accordance with the terms of the restrictive covenants already in place, this Court examined the restrictive covenants and the undisputed facts regarding the amendments' adoption, determining that Grand Valley properly adopted the 1998 amendments and that "the grant of summary judgment in favor of Grand Valley on the question of the validity of the [1998 amendments] was correct unless any of [the homeowner's] counter-claims survive." *Id.* at 82-83. When subsequently reviewing the counter-claims presented by the homeowner and the issue regarding the applicable statute of limitations, this Court first noted that the lower court had not stated which statute of limitations was applicable to the homeowner's counter-complaint, determining that "[b]ecause [the homeowner's] counter-claims were filed over nine years after the amendments were approved, it is obvious that all applicable statutes of limitation had expired by this time." *Id.* at 83. This determination was based in part on the six-year statute of limitations applicable to contract claims. *Id.*

The *Grand Valley Lakes* Court's application of a statute of limitations to the homeowner's counter-claim actually challenging the validity of amendments to restrictive covenants in *Grand Valley Lakes* is distinguishable from the circumstances in the case at bar. In *Grand Valley Lakes*, the homeowner made two distinct assertions that the 1998 amendments were invalid. The first assertion of invalidity was through the homeowner's answer to Grand Valley's complaint, which asserted invalidity of the amendments as a defense to Grand Valley's claim for dues. *Id*. at 72. The second assertion of invalidity was through the homeowner's counter-claim also asserting invalidity of the amendments. *Id*. This Court reviewed the applicability of a statute of limitations specifically with respect to the homeowner's counter-claim only, which was an action challenging the validity of the amendments. *Id.* at 83; *see* Tenn. Code Ann. § 28-1-101. Prior to this, however, the *Grand Valley Lakes* Court had independently reviewed the validity of the 1998 amendments with respect to Grand Valley's complaint and the homeowner's answer, which raised invalidity of the amendments as a defense. *Id.* at 79-82. We note that neither this Court nor the trial court in *Grand Valley Lakes* considered the statute of limitations with respect to the homeowner's answer denying the validity of the 1998 amendments and that neither court presumed the validity of the 1998 amendments due to the potentially expired statute of limitations.

21

We determine that the validity of the 2005 Amendments has not been challenged as part of an <u>action</u> in the case at bar. The Moy Toy Board relied upon the validity of the 2005 Amendments in the Moy Toy Complaint in order to affirmatively prove its claim, and the Moy Toy Board introduced the 2005 Amendments in its answer to the third amended Owner Complaint in order to prove its affirmative defense. We do not discern either pleading as an action challenging the validity of the 2005 Amendments. Rather, the Moy Toy Board relied upon the validity of the 2005 Amendments in order to support its claim of possessing developer's rights, which resulted in the Moy Toy Board's assuming the burden of proof regarding the amendments' validity. *See Winford*, 812 S.W.2d at 295. Having determined that the statute of limitations set out in Tennessee Code Annotated § 28-3-109(a)(3) applies only to actions and that no action challenging the 2005 Amendments has been filed herein, we further determine that § 28-3-109(a)(3) is inapplicable to the case at bar. We therefore reverse the trial court's ruling that the 2005 Amendments were valid due to expiration of the six-year statute of limitations. Having so determined, the Owner Board's issue regarding the tolling of the statute of limitations is pretermitted as moot.

## B. Alternative Rulings

Having concluded that the six-year statute of limitations codified at Tennessee Code Annotated § 28-3-109(a)(3) does not bar the Owner Board's challenge to Moy Toy's possession of developer's rights, we will now address the trial court's alternative ruling anticipating this determination. *See Am. Heritage Apartments, Inc*., 494 S.W.3d at 51. Pertinent to this issue, the trial court found that "based on the evidence[,] the By-Laws and Amendments recorded in 2005 are invalid because they were not enacted in accordance with their terms." The court found that the 2005 Amendments had never been "approved by the members of the RMCC[,] which [was] required for the amendment[s] to be valid." The Moy Toy Board contends that the trial court erred by making this alternative ruling because the court excluded the Moy Toy Board's evidence concerning the adoption of the 2005 Amendments, which the Moy Toy Board asserts may have materially affected the court's determinations. Upon a thorough review of the Moy Toy Board's offer of proof, we determine that the trial court's alternative ruling regarding the validity of the 2005 Amendments and Moy Toy's claim to developer's rights thereunder, without consideration of the Moy Toy Board's evidence concerning this issue, substantially affected the rights of the Moy Toy Board and thereby constituted reversible error. *See* Tenn. R. Evid. 103(a)(2).

As our Supreme Court has explained, "[i]n order for an appellate court to review a record of excluded evidence, it is fundamental that such evidence be placed in the record in some manner." *State v. Goad*, 707 S.W.2d 846, 852 (Tenn. 1986). "When, however, it consists of oral testimony, it is essential that a proper offer of proof be made in order

that the appellate court can determine whether or not exclusion was reversible." *Id.* at 853. "Additionally, a trial court's decision regarding the exclusion of evidence, even if erroneous, will not be the basis for reversal unless it affected a substantial right of a party and 'more probably than not affected the judgment or would result in prejudice to the judicial process.'" *In re Estate of Darken*, No. M2016-00711-COA-R3-CV, 2016 WL 7378806, at *12 (Tenn. Ct. App. Dec. 20, 2016) (quoting Tenn. R. App. P 36(b)). Therefore, "[a]n erroneous exclusion of evidence requires reversal only if the evidence would have affected the outcome of the trial had it been admitted." *Bean v. Wilson Cty. School System*, 488 S.W.3d 782, 793 (Tenn. Ct. App. 2015) (quoting *Thompson v. City of LaVergne*, No. M2003-02924-COA-R3-CV, 2005 WL 3076887, at *9 (Tenn. Ct. App. Nov. 16, 2005)).

As a prelude to our review of the Moy Toy Board's offer of proof, we note that there are two issues that the trial court alternatively ruled on as pertinent to Moy Toy's purported developer's rights in Renegade Mountain. First, the trial court determined that the developer's rights, consisting of personal property and not related to interests in real property, did not pass to Moy Toy by reason of an unbroken series of conveyances. Second, the trial court determined that the 2005 Amendments were not properly enacted and, therefore, were invalid.

Following the trial court's grant of a directed verdict, the Moy Toy Board made an offer of proof containing information relevant to both of the above alternative rulings. With respect to the 2005 Amendments, the Moy Toy Board filed correspondence demonstrating that it had intended to call two attorneys to testify regarding the adoption of the amendments, who would presumably have expressed opinions regarding the validity of the adoption process. The Moy Toy Board's offer of proof further indicated that it intended to present evidence that could potentially impeach Mr. Looney's testimony regarding the adoption of the 2005 Amendments. Had this evidence been admitted, clearly it could have affected the trial court's alternative ruling regarding the issue of the 2005 Amendments' validity.

Accordingly, we determine that the issue of the validity of the 2005 Amendments must be remanded to the trial court for further hearing and determination. On remand, the trial court should allow both sides to present evidence concerning the process of adoption of the 2005 Amendments and whether the requirements for such adoption were properly followed. The validity and applicability of the 2005 Amendments not only affects the issue of Moy Toy's possession of developer's rights but also the remaining issues raised on appeal.

Although we acknowledge that the Moy Toy Board also claimed possession of developer's rights via chain of title, Moy Toy was precluded from presenting its evidence

concerning this claim due to the grant of directed verdict. With respect to the conveyances of developer's rights as they may have passed to Moy Toy, we note that the Owner Board presented evidence supporting the existence of two potential gaps in the chain of title through the testimony of Mr. Looney. According to Mr. Looney, Cumberland Gardens Acquisitions Corporation, which conveyed title to a large portion of the undeveloped real property in Renegade Mountain to Renegade Resort, LLC, did not discuss a conveyance of developer's rights to Renegade Resort, LLC, during the negotiations over the sale. Additionally, a question existed as to whether Cumberland Gardens Acquisitions Corporation gained developer's rights in Renegade Mountain when it gained title to its interests in Renegade Mountain through a foreclosure sale of the previous known developer, Cumberland Gardens Limited Partnership.

Moy Toy's offer of proof concerning this issue included an affidavit from attorney Joe Huie, who stated that he had researched the issue of developer's rights and opined that Moy Toy possessed such rights through a proper chain of title. Again, this evidence was not considered by the trial court due to the grant of a directed verdict based on the statute of limitations. Had this evidence been considered, clearly it could have affected the trial court's alternative ruling regarding whether Moy Toy possessed developer's rights through an unbroken chain of title. This being the case, we must reverse the trial court's alternative ruling and remand this issue to the trial court for further hearing and determination as well. The trial court should allow both sides to present evidence concerning the chain of title of developer's rights in Renegade Mountain.

## C. Moy Toy's Voting Rights

Having determined that the six-year statute of limitations is inapplicable to the Moy Toy Board's reliance on the 2005 Amendments as valid instruments and that the issue of whether Moy Toy possessed developer's rights must be remanded to the trial court, we are unable to determine whether Moy Toy was properly allowed to vote at a ten-to-one ratio for each of its owned lots without the payment of dues during the court-ordered special election. Accordingly, we are unable to determine whether the special master properly counted 3,363 votes for Moy Toy during such election. For this reason, the August 25, 2017 special election results are vacated. The trial court must first make a determination concerning the issue of whether Moy Toy validly possessed developer's rights before another special election can be held.

## V. Members in Good Standing in 2011

The Owner Board contends that the special meeting held on September 2, 2011, was valid because the members calling and attending the meeting were in good standing. In support of this contention, the Owner Board argues that the RMCC annual assessment

24

for 2011 was not due prior to the meeting, meaning that all owners who were current in their dues payments through 2010 were in good standing as members of RMCC. The Moy Toy Board contends that, pursuant to the 2005 By-laws, annual assessments were due on the first of February of each year regardless of whether RMCC sent an invoice.

We note that resolution of this issue turns on the applicability and resultant interpretation of the 2005 Amendments. Without a determination by the trial court regarding the validity of the 2005 Amendments, after hearing all of the evidence from both sides, this Court cannot properly rely upon the provisions contained within those Amendments to determine which members were in good standing at the time of the September 2, 2011 special election. This Court also cannot consider whether any prior versions of the Restrictions and/or By-Laws would or should be applied to such determination. Accordingly, we reverse the trial court's ruling on this issue and remand the issue for further determination.

## VI. Common Areas and Roadways of Renegade Mountain

The Owner Board contends that the trial court erred by determining that Moy Toy, as the developer of Renegade Mountain, was able to retain title to the common areas in Renegade Mountain without being obligated to convey title to the common areas to RMCC. The Owner Board further contends that the trial court erred by determining that Moy Toy had the power to control the unplatted roads of Renegade Mountain with the exception of the entrance road and bridge to Renegade Mountain.

These issues are largely impacted by two determining factors: (1) whether the trial court properly determined that Moy Toy maintained developer's rights and (2) which version of the Restrictions and By-laws were to be applied. Therefore, the rulings on these issues are reversed and must be addressed by the trial court on remand as well.

## VII. Special Master's Report

The Owner Board contends that the trial court erred by approving the special master's report in total, arguing that the special master erroneously considered voluntary donations to a legal fund as annual assessments. According to the special master's report, the Owner Board had a commingled account for RMCC from which it paid $143,513.55 in legal fees. The special master further determined that the Owner Board had not presented sufficient evidence to demonstrate that funds in the RMCC account were voluntary deposits of legal funds from private contributions. The special master therefore determined that the entire amount should be repaid to RMCC.

In its June 29, 2016 order, the trial court determined that both sides would be responsible for their own attorney's fees and that "these funds are not to be charged back against the RMCC and/or the owner but such costs should be borne by Moy Toy, LLC and/or the Plaintiffs in the 527 Case and the Defendants in the 508 Case." The court further stated that "Plaintiffs in the 508 Case and Defendants in the 527 Case will bear their own attorney's fees," and ordered the special master to "make a determination as to the amount of attorney's fees and costs paid from money from RMCC annual assessments paid to either Board and require disgorgement of the same."

This Court's concern with this issue is that the trial court's order failed to state a legal basis for its ruling requiring repayment of attorney's fees expended. Lacking sufficient findings of fact and conclusions of law, this Court is unable to discern whether the trial court based its ruling, in whole or in part, on an interpretation of the 2005 Amendments. We therefore reverse the trial court's ruling with regard to repayment of attorney's fees and remand this issue for further findings and/or conclusions regarding the basis of the ruling.

## VIII. Conclusion

We reverse the trial court's rulings with respect to the issue of developer's rights and the statute of limitations; the validity of the September 2, 2011 election; control over platted and unplatted areas of Renegade Mountain; and the results of the August 25, 2017 special election. We further reverse the trial court's ruling requiring repayment of legal fees to RMCC. We remand this matter to the trial court for further proceedings consistent with this opinion. The costs on appeal are taxed one-half to the appellants, Gary Haiser, Joel Matchak, John Moore, Gerald Nugent, Tina Williams, and Judy Scales Patterson, and one-half to the appellees, Michael McClung; Phillip Guettler; Darren Guettler; and Moy Toy, LLC.

_____
THOMAS R. FRIERSON, II, JUDGE

26